UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
Tyrone **DOTSON**,

                        Plaintiff,

     -against-

Brian **FISCHER**, Commissioner,
New York State Department of
Corrections and Community Supervision,

Dr. Carl J. **KOENIGSMANN**, M.D.,
Deputy Commissioner and Chief
Medical Officer,
New York State Department of
Corrections and Community Supervision,

Dr. Eileen **DINISIO**, M.D.
Regional Medical Director,
New York State Department of
Corrections and Community Supervision,

Dr. Beverly **PRINCE**, M.D.
Erie County Medical Center,

Dale **ARTUS**, Superintendent,
Wende Correctional Facility,
New York State Department of
Corrections and Community Supervision,

Rosalyn **KILLINGER**, Deputy Superintendent
For Health Services,
Wende Correctional Facility,
New York State Department of
Corrections and Community Supervision,

Thomas **STICKT**, Deputy Superintendent
For Security Services,
Wende Correctional Facility,
New York State Department of
Corrections and Community Supervision,

**PRISONER CIVIL RIGHTS
COMPLAINT**

12-CV- _0930 F_
( ) ( )

**Jury Trial Demanded**



Dr. Jacqueline **LEVITTE**, M.D.
Facility Health Services Director,
Wende Correctional Facility,
New York State Department of
Corrections and Community Supervision,

                                    Defendants.

## I. INTRODUCTION

1.    Pro Se Plaintiff Tyrone Dotson is a New York State Prisoner seeking punitive damages pursuant to 42 U.S.C. §1983[1] for violation of his Constitutional Right under the Eighth Amendment to be free from cruel and unusual punishment and to receive timely and proper medical treatment, while in the care and custody of the New York State Department of Corrections and Community Supervision, and further violation of Dotson's First Amendment Right to be free from retaliation for putting into practice his right to petition the Administration to redress his grievances.

2.    Plaintiff Dotson alleges that the defendants violated his constitutional rights as guaranteed by the First and Eighth Amendments to the United States Constitution by being denied proper and timely medical treatment to address a serious medical need, and that the defendants retaliated against Plaintiff Dotson for filing various Facility Grievances concerning his lack of medical treatment, and the defendant's deliberate indifference to his serious medical need, which has left Plaintiff Dotson permanently disabled, and has further resulted in mental anguish to the Plaintiff.

Plaintiff further alleges that Defendant Beverly Prince was medically negligent when she failed to remove gauze form the plaintiff's ear canal after performing surgery on the plaintiff.

---

[1] As a Pro Se Plaintiff with no formal legal training or counsel, Plaintiff Dotson respectfully requests this Court construe the instant complaint liberally, and interpret his claims as making the strongest arguments possible. See *Haines v Kerner*, 404 U.S. 519 (1972) (*holding that pro se papers should be construed liberally to avoid unfairness*).

A.     *Parties*

3.     Plaintiff Tyrone Dotson was at all times relevant to the instant complaint - and continues to be - a New York State prisoner in the care and custody of the New York State Department of Corrections and Community Supervision (herein *D.O.C.C.S.*).

4.     Defendant Brian Fischer is the Commissioner and Chief Executive Officer of D.O.C.C.S. In that capacity, he has the responsibility, authority, and obligation to oversee the management of all State Correctional Facilities, and to ensure that each prisoner's constitutional rights are protected.

5.     Defendant Carl J. Koenigsmann is a duly licensed Medical Doctor, licensed to practice medicine in the State of New York, and is also a Deputy Commissioner for the D.O.C.C.S., and is employed the position of Chief Medical Officer for the D.O.C.C.S. In that capacity, Defendant Koenigsmann has the authority to approve or deny recommended medical treatment/procedures for all State Prisoners.

Based upon information and belief, Defendant Koenigsmann is a licensed General Practitioner, with no specific specialized area of medicine.

6.     Defendant Eileen Dinisio is a duly licensed Medical Doctor, licensed to practice medicine in the State of New York, and is also a Regional Medical Director for the _____ Region for the D.O.C.C.S. In that capacity, Defendant Dinisio has the authority to approve or deny recommended medical treatment/procedures for all State Prisoners whom are confined within her Region.

Based upon information and belief, Defendant Dinisio is a licensed General Practitioner, with no specific specialized area of medicine.

7. Defendant Beverly Prince is a duly New York State licensed Medical Doctor, who is under contract with the D.O.C.C.S. to perform various medical examinations and required surgeries upon State prisoners.

Upon information and belief, Defendant Prince specializes in Ear, Nose and Throat diagnoses and treatment. It is further believed that Defendant Prince enjoys medical privileges at both the Erie County Medical Center and the Wyoming County Medical Center.

8. Defendant Dale Artus is the Superintendent of the Wende Correctional Facility located in Alden, New York. In that capacity, he is the Chief Administrative Officer at Wende and has the responsibility of the supervision and management of all subordinates employed at the Wende Correctional Facility. Defendant Artus also is the final authority for all Facility Grievances that are filed at the Wende Correctional Facility.

9. Defendant Rosalyn Killinger is an employee of the D.O.C.C.S. in the position of Deputy Superintendent for Health Services at the Wende Correctional Facility. In that capacity, Defendant Killinger has the responsibility of overseeing the Medical Department at Wende Correctional Facility. Defendant Killinger is the immediate supervisor of all State employees working at the Wende Correctional Facility Regional Medical Unit (R.M.U.).

10. Defendant Thomas Sticht is an employee for the D.O.C.C.S. at the Wende Correctional Facility in the position of Deputy Superintendent for Security Services. With the exception of Defendant Artus, Defendant Sticht is the final authority at Wende Correctional Facility on all issues concerning the security of Wende Correctional Facility.

11. Defendant Jacqueline Levitte is a duly licensed Medical Doctor, licensed to practice medicine in the State of New York, and is also employed the position of Facility Health Services Director at the Wende Correctional Facility for the D.O.C.C.S. In her official capacity, Defendant Levitte has the responsibility and authority for the immediate supervision of all inmate medical care and treatment at the Wende Correctional Facility. Defendant Levitte also has the authority to issue specified treatment (example: Meals in Cell) for individual prisoners on a case-by-case basis.

Based upon information and belief, Defendant Levitte is a licensed General Practitioner, with no specific specialized area of medicine.

12. At all relevant times, Defendant's Fischer, Koenigsmann, Dinisio, Artus, Killinger, Sticht, and Levitte acted under the color of State Law. At all relevant times, Defendant Prince was under contract to the D.O.C.C.S. to provide proper medical treatment to the State Prisoners she examined and treated.

13. All defendants are being sued in both their official and individual capacities.

B.   *Issues Under Attack*

14. Plaintiff Dotson was, at all relevant times mentioned herein, an inmate confined to the New York State Department of Corrections and Community Supervision. During all relevant times complained of herein, plaintiff was incarcerated at the Wende Correctional Facility, located in Alden, New York. As such, the New York State Department of Corrections and Community Supervision, and its employees, are responsible for plaintiff's medical care and treatment. The defendants named herein were deliberately indifferent to plaintiff's serious medical needs for a period of twelve (12)

months, causing plaintiff unnecessary and wanton pain and suffering. Said deliberate indifference has left plaintiff permanently disabled.

15. These acts of negligence and deliberate indifference to plaintiff's serious medical need violated plaintiff's Eighth Amendment rights under the United States Constitution.

16. Plaintiff additionally alleges that Defendant Prince was medically indifferent and negligent when, after performing surgery upon the plaintiffs' left ear, she left a gauze in the plaintiff's ear, which caused the plaintiff to unnecessarily suffer extreme pain and discomfort for an extended period of time

17. Plaintiff further alleges that Defendants Levitte and Sticht retaliated against plaintiff after he filed grievances concerning the lack of treatment he was receiving by discontinuing the treatment plaintiff was receiving.

18. These acts of negligence, deliberate indifference, and retaliation violated the plaintiff's Constitutional Rights under the United States Constitution.

## II. PROCEDURAL ISSUES

19. The instant complaint is a civil action authorized by 42 U.S.C. §1983 to redress the deprivation, under color of state law, of rights secured by the United States Constitution.

A. *Jurisdiction*

20. This Court has Federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

21. Declaratory and punitive relief is authorized by 28 U.S.C. §§ 2201 and 2202.

22.     Declaratory and punitive relief is authorized by Title 28 United States Code §§ 2201 and 2202.

B. **Venue**

23.     Pursuant to Title 28 United States Code §139(b), venue is proper in the United States District Court for the Western District of the State of New York, the Judicial District in which the claims arose, and in which Plaintiff Dotson currently resides.

C. **Previous Lawsuits**

24.     Plaintiff Dotson has not filed any previous lawsuits in Federal or State Court.

### III. BACKGROUND

A. **Description of Incident**

25.     In August of 2005, Plaintiff Dotson, while confined at the Auburn Correctional Facility, complained to the Medical Department Staff of pain and the reduction of hearing in his left ear. As a result of these complaints, Plaintiff was sent to be evaluated by Dr. Jack Hsu of the Upstate Medical Center in Syracuse New York.

26.     On September 20, 2005, Dr. Hsu performed a Tympanomastoidectomy on Plaintiff's left ear. On April 4, 2006, Dr. Hsu performed the second stage of the procedure, which included placing a prosthesis in Plaintiff's left ear. The prosthesis was ill-fitting and resulted in the Plaintiff developing an infection in his left ear. Plaintiff made numerous complaints to the Medical Staff concerning his on-going pain and discomfort due to the ill-fitting prosthesis.

27.     On August 4, 2005 Plaintiff was diagnosed as being HL30 (Hearing Loss/Non-significant) by Audiologist John Serhan. This same diagnoses was made by Mr. Serhan on April 11, 2007, even though the Plaintiff continued to complain to the Medical Staff of increased

hearing loss.

28. In 2007, Plaintiff was transferred to the Sullivan Correctional Facility in Sullivan County, New York. While at Sullivan, the Plaintiff underwent another surgerical procedure to remove the prosthesis that was placed in Plaintiff's left ear by Dr. Jack Hsu in 2005. This procedure was performed by one Dr. Silver of the Albany Medical Center in Albany, New York.

29. In 2009, Plaintiff was transferred to his present place of confinement, the Wende Correctional Facility in Alden, New York. This transfer took place for disciplinary reasons, and took place prior to the follow-up appointment that Dr. Silver ordered, and despite the fact that, at the time, the Plaintiff had a "Medical Hold" placed on him by the Sullivan Medical Staff to ensure that Plaintiff was seen again by Dr. Silver.

30. In 2009, as follow-up care for the procedure conducted by Dr. Silver, Plaintiff was seen by Defendant Dr. Beverly Prince. During the examination of Plaintiff's left ear, while "probing" the ear, Dr. Prince aggravated the masitiod, which caused it to leak puss. Cr. Prince ordered a C.A.T. Scan, and discovered a cist.

31. On August 27, 2009, Nurse Practioner Jennifer Wrest, after reading the results of the C.A.T. Scan, submitted a recommendation for surgery to remove the cist. This recommendation was sent as an "Urgent Level" need of attention. Upon information and belief, this recommendation was denied by Defendant Dinisio, and upheld by Defendant Koenigsmann.

32. Between August 27, 2009 and August 1, 2010, Plaintiff continued to attend Facility "Sick Call" complaining of vertigo, blinding headaches, extreme pain in his left ear, and increased hearing

loss.

33. On August 28, 2010 Plaintiff underwent a surgical procedure to remove the cist that was discovered during the 2009 C.A.T. Scan. Said cist was described as being of "significant size" by the attending surgeon, Defendant Dr. Beverly Prince. This procedure was performed at the Wyoming County Medical Center.

34. Approximately four (4) days after the surgery, Plaintiff began receiving ear drops to his left ear as part of his follow-up treatment. Three (3) days after treatment began, a nurse of the Wende Medical Department informed the Plaintiff that the ear drops were not reaching the point of incision because Dr. Prince had left a surgical gauze inside the Plaintiff's ear.

35. On November 1, 2011 Plaintiff underwent another procedure which was also performed by Dr. Prince. Prior to the actual surgery, as part of his rights under the Patient's Bill of Rights pertaining to informed consent, Dr. Prince told the Plaintiff that the second procedure was for the <u>removal</u> of the mastoid from Plaintiff's left ear. However, Dr. Prince did not remove the mastoid, but simply "shaved" it to the nerve.

36. Each and every one of the problems and/or complaications described in paragraphs 25 through 35 could have been avoided if the Defendants Dinisio, Koenigsmann and Fischer had acted in a timely manner and approved Nurse Practitioner Wrest's recommendation of Urgent Care for Plaintiff's condition instead of making the Plaintiff wait a year before responding to Plaintiff's complaints and various grievances concerning the lack of timely and proper medical treatment for Plaintiff's obvious serious medical needs.

37. For the next six (6) months, Plaintiff made various complaints to a number of both Medical and Administrative Personal at the Wende Correctional Facility. These complaints and grievances concerned increased veritgo, excessive bleeding at the incision, and pain in the eyes when exposed to bright lights and loud noises. These complaints and grievances were either totally ignored at the Facility level, or were denied in Albany Central Office.

38. On August 16, 2011 Plaintiff had an appointment with Defendant Dr. Levitt to address the problems described in paragraph 33, supra. Dr. Levitt told the Plaintiff to expect these problems due to the type of surgery he underwent, and instructed him not to use salt in his food. However, when Plaintiff requested to be placed on a low-sodium diet, due to the fact that he (Plaintiff) had no control over the amount of salt that the cooks place in the food during preperation of it, Dr. Levitt responded "[t]here is no need for a low-sodium diet," further displaying a deliberate indifference to Plaintiff's serious medical needs.

39. During this same appointment, Dr. Levitt issued a "Feed-In-Cell" Medical Permit for a period of six (6) months. This permit permitted the Plaintiff to have his meals brought to his cell, rather than have the Plaintiff go to the Mess Hall and risk the chance of his having a veritgo attack because of the loud noises and bright lights in the Mess Hall. When this permit went before Defendant Deputy Superintendent for Security Sticht for approval, Defendant Sticht changed it to a "Medical Keeplock" Permit for the same period (i.e., six months). This Medical Keeplock meant that the Plaintiff was confined to his cell 23 hours a day, and only allowed out for one (1) hour exercise, showers and mandatory appointments/callouts; the same as if the Plaintiff was

under Disciplinary Confinement, as opposed to "Feed-In-Cell," which would allow the Plaintiff to participate in the three (3) Recreation Periods allowed each day. Defendant Sticht took this course of action in retaliation to the Plaintiff's grievances and complaints concerning the lack of proper medical treatment he was receiving for a serious medical condition.

40. On June 26, 2012 - seven (7) months after the surgery - Plaintiff was again seen by Defendant Prince as a "follow-up" to the November 1, 2011 surgery. Defendant Prince informed Plaintiff that he now has a hole in his left ear drum, and that she (Dr. Prince) was going to recommend that Plaintiff be seen by someone "more qualified" than herself to evaluate Plaintiff's condition, and to establish a course of action/treatment. Dr. Prince failed to inform the Plaintiff how he came about to have the hole in his eardrum. As of the date of this filing, Plaintiff has not seen any other physician concerning his left ear.

41. Plaintiff's continuous complaints concerning pain and discomfort have been totally ignored by the Defendants Levitt, Killinger, Artus, Dinisio, Koenigsmann and Fischer, further demonstrating a deliberate indifference to Plaintiff's serious medical needs in violation of his Eighth Amendment Rights.

B. **Exhaustion of Available Remedies**

42. Plaintiff presented all of the claims raised herein to Prison Authorities through the prison grievance process. Upon being denied relief, Plaintiff Dotson appealed to Defendant Dale Artus as Superintendent and Chief Administrative Officer of the Wende Correctional Facility and ultimately to the Department of Corrections and Community Supervision's Inmate Grievance Program Central Office Review Committee

in accordance with established procedures for each separately numbered grievance.

43. Plaintiff Dotson has given the New York State Department of Corrections and Community Supervision's highest Administrative Body an opportunity to review and address his claims, thus satisfying the exhaustion requirements of 42 U.S.C. §1997e(a).

C. **Timeliness**

44. As is demonstrated and fully explained in detail herein, Plaintiff Dotson's last grievance was denied in April of 2012 by the Central Office Review Committee. As such, the instant complaint has been timely filed.

### IV. FIRST CAUSE OF ACTION

45. The Plaintiff has been denied proper and adequate medical treatment to a serious medical need, resulting in the unnecessary and wanton infliction of pain upon the Plaintiff.

46. Various Federal and State Courts have repeatedly ruled that the deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment right to be free from cruel and unusual punishment. The deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment because denying or delaying medical treatment is tantamount to unnecessary and wanton infliction of pain.

47. Beginning is 2009, Defendant's Fischer, Koenigsmann, Dinisio, Artus, Killinger, and Levitte demonstrated deliberate indifference to the Plaintiff's serious medical needs by first permitting him to be transferred from the Sullivan Correctional Facility before he had received a "follow-up" visit with the surgeon who performed the first surgery even though a "medical hold" had been placed on Plaintiff for that purpose, and again by making him wait a year before authorizing the surgery on his left ear. This delay in treatment has resulted

## V. SECOND CAUSE OF ACTION

47.   The Plaintiff ahs been retaliated against by defendants sticht and Levette in violation of his First Amendment right to Petition Authorities to redress greivances.

48.   After Plaintiff had received medical permission to have his meals brought to his cell, defendants Stricth and Levette conspired to place plaintiff on a more restricted keeplock in retaliation of plaintiff filed grievances concerning the lack of proper medical treatment.

49.   Retaliation by prison officials against a prisoner for pursuing a grievance, violates the prisoner's First Amendment Right to petition the Government for redress of grievances, the prisoner need not show a separate, independent injury as an element of the inmate's case, since an injury to a prisoner's constitutional right in inherent int he retaliartion conduct itself.

## VI. THIRD CAUSE OF ACTION.

50.   As a result of defendant Prince   medical negligence, plaintiff is permently disabled.

51.   Approximately seven (7) days after the initial surgery performed by defendant Pranc on august 28, 2010, i.e., September 4, 2010, plaintiff was informed by a member of the Wende Correctional Facility medical staff that  the prescribed ear drops were not reaching the point of incision because Dr. Prance had "mistakenly" left a surgical cauze inside the plaintiff's ear.

52. Grossly incompetent or inadequate care can constitute deliberate indifference, as can a doctor's negligence in performing a special surgery. Medical care so inappropriate as to evidence failure to provide essential care violates the Eighth Amendment.

## VI. PRAYER FOR RELIEF

WHEREFORE, I request that this Court grant this applicant the amount of $400,000.00 collectively as well as $50,000.00 for each defendant in their individual capacity. It is further requested that this Court grant applicant such other relief as this Court may deem just.

Dated:

                                            Tyrone Dotson, Plaintiff
                                            Pro Se
                                            Wyoming Correctional Facility
                                            Post Office Box 501
                                            Attica, New York 14011-0501

Sworn to before me this
28th day of SEPTEMBER, 2012

NOTARY PUBLIC
KONKLE ANDREW SR.
Notary Public, State of New York
No. 01KO6022397
Qualified in Erie County
Commission Expires March 29, 2015