UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TYRONE DOTSON,

    Plaintiff,

v.

BRIAN FISCHER, Commissioner, New
York State Department of Corrections
and Community Supervision, et al.,

    Defendants.

12-CV-930
DECISION AND ORDER

---

On October 10, 2012, the plaintiff, Tyrone Dotson, filed this action raising claims under 42 U.S.C. § 1983. Docket Item 1. On July 11, 2018, the defendants moved for summary judgment. Docket Item 44. On October 3, 2018, Dotson responded, Docket Item 48, and on November 30, 2018, the defendants replied, Docket Item 49.

On August 20, 2019, this Court referred this case to United States Magistrate Judge Leslie G. Foschio for all proceedings under 28 U.S.C. § 636(b)(1)(A) and (B). Docket Item 5. On September 4, 2019, Judge Foschio issued a Report and Recommendation ("R&R") finding that the defendants' motion should be granted. Docket Item 51.

On September 18, 2019, Dotson objected to the R&R, arguing that Judge Foschio erred in finding that no genuine issues of material fact existed with respect to Dotson's claims that the defendants were deliberately indifferent to his medical needs and retaliated against him for filing grievances. Docket Item 52. On October 8, 2019, the defendants responded to the objections, Docket Item 54, and on October 24, 2019,

Dotson replied, Docket Item 55.  This Court heard oral argument on January 10, 2020, and reserved decision.  Docket Item 61.

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  A district court must conduct a de novo review of those portions of a magistrate judge's recommendation to which objection is made.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

This Court has carefully reviewed the thorough R&R, the record in this case, the objection and response, and the materials submitted by the parties.  Based on that de novo review, this Court accepts in part and rejects in part Judge Foschio's findings.

As explained in more detail below, this Court agrees with Judge Foschio that the defendants are entitled to summary judgment on Dotson's claim that they were deliberately indifferent to his medical needs in violation of the Eighth Amendment.  But this Court respectfully disagrees with Judge Foschio's recommendation to grant the defendants' motion for summary judgment with respect to Dotson's claim that they retaliated against him for filing grievances in violation of the First Amendment.

## **DISCUSSION**

The Court assumes the reader's familiarity with the underlying facts and Judge Foschio's analysis in the R&R.  *See* Docket Item 51.

**I.     DOTSON'S EIGHTH AMENDMENT DELIBERATE INDIFFERENCE CLAIM**

Dotson's Eighth Amendment claim stems from medical treatment he received for a cholesteatoma (abnormal, noncancerous skin growth behind the ear drum).  The only

remaining defendant against whom Dotson brings this claim is Beverly Prince, M.D., an otolaryngologist retained by the New York State Department of Corrections and Community Supervision ("DOCCS") to provide consultant medical treatment upon referrals from DOCCS.[1]

Dr. Prince first examined Dotson in August 2009. Docket Item 48-1 at 22. She performed a skin graft surgery on Dotson's ear canal on November 1, 2010. *Id.* at 23. The crux of Dotson's claim is that in waiting thirteen months to perform that surgery, Dr. Prince was deliberately indifferent to Dotson's medical needs.

Dr. Prince testified that her practices were consistent with standard procedures for addressing Dotson's symptoms. *Id.* at 19-20. She further testified that she delayed surgery to explore less-invasive options because each surgery resulted in additional scar tissue, which could exacerbate Dotson's ear problems. *Id.*

Dotson argues in his objection that there is a material issue of fact as to whether Dr. Prince was deliberately indifferent to his serious medical needs because she "elected not to perform a skin graft surgery to treat the underlying cause of Dotson's ear condition until November 1, 2010—thirteen months after the consultation at which Dr. Prince diagnosed the cholesteatoma." Docket Item 52 at 5. But he offers no medical evidence to rebut Dr. Prince's testimony explaining her reasons for delaying the surgery. In the absence of any medical expert to rebut Dr. Prince, a lay jury would have no basis to conclude that the delay in performing the surgery was deliberately indifferent—particularly given that Dr. Prince was providing other treatment in the

---

[1] Dotson withdrew his claims against defendants Carl J. Koenigsmann and Eileen Dinisio in his opposition to the defendants' motion for summary judgment. Docket Item 48 at 1 n.1.

interim. *Cf. Hardy v. City of New York*, 732 F. Supp. 2d 112, 132 (E.D.N.Y. 2010) (denying summary judgment on deliberate indifference claim where "[t]he evidence show[ed] that staff was aware of [the plaintiff]'s ear condition, *but declined to provide him any medical care*" (emphasis added) (citation omitted)).

Thus, this Court accepts and adopts Judge Foschio's finding that the defendants are entitled to summary judgment on Dotson's claim that the defendants were deliberately indifferent to his medical needs.

## II. DOTSON'S FIRST AMENDMENT RETALIATION CLAIM

Dotson also alleges that defendant Thomas Sticht, the Deputy Superintendent for Security Services at the Wende Correctional Facility, retaliated against Dotson for filing grievances. Dotson alleges that the retaliation involved placing him on "medical keeplock"—which confined him to his cell for twenty-three hours a day—instead of issuing the "feed-in-cell" ("FIC") permit that was recommended by Dotson's treating physician. Docket Item 52 at 2. Dotson further contends that Judge Foschio incorrectly credited Sticht's testimony that Sticht was unaware of Dotson's grievances and that Sticht had placed Dotson on medical keeplock for Dotson's own safety. *Id.* at 3-4. For the reasons that follow, this Court agrees with Dotson.

Dotson filed at least fifteen grievances between 2009 and 2011. Docket Item 48-1 at 24. What is more, Dotson filed the last of those—complaining about the prison's failure to implement his FIC permit—just *two days* before Sticht put him on medical keeplock. *Id.* at 23.

Sticht testified that he didn't "really remember [Dotson's grievances] being a problem because [Sticht] wouldn't have heard from him. The only ones [Sticht] ever

4

heard about were people that flood the system." Docket Item 44-7 at 31. When asked whether Dotson had ever filed a grievance against him, Sticht responded: "Beats me. I don't know. I haven't had a grievance put on me in years. I find it unlikely, but I can't say yes or no." *Id.*

Sticht further testified that he placed Dotson on medical keeplock because Dotson had complained of vertigo and Sticht therefore thought Dotson should not attend any program or work to protect Dotson from injuring himself. Sticht added that Dotson's disciplinary history, including a history of violence, suggested that he should be kept to his cell for his own safety.

There are material issues of fact with respect to Sticht's reasons for putting Dotson on medical keeplock that cannot be resolved on summary judgment. As an initial matter, a jury could infer from the very close temporal proximity between the final grievance and Sticht's decision to place Dotson on medical keeplock that the action was retaliatory. *See Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) ("A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action.").

Moreover, while it is true that Sticht offered a non-discriminatory explanation, a jury could find that explanation incredible. For example, as Dotson observes, there is evidence that members of Sticht's security staff singled out Dotson and intimidated him, undermining Sticht's testimony about his concern for Dotson's safety. Docket Item 52 at 3. And as Judge Foschio recognized, "most of [Doston]'s issues involving violence occurred in the correctional facility's messhall," Docket Item 51 at 25; thus, the FIC restriction—which would have kept Dotson out of the mess hall—arguably would have

5

been sufficient to protect him. What is more, Sticht's testimony that he was not aware of Dotson's grievances is belied by his assertion that he would know any inmate who "flood[ed] the system." *See* Docket Item 55 at 3. At the very least, there is a question of fact as to whether fifteen grievances are a "flood."

The defendants argue that the Supreme Court's decision in *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977), dictates that this Court should "accept the unrebutted testimony of prison officials concerning prison safety and administration as a sufficient basis for motions for summary judgment." Docket Item 54 at 6. Here, however, Sticht's testimony is not unrebutted. Dotson has pointed to inconsistencies that undermine Sticht's credibility, as well as the suspicious timing of Sticht's decision to put Dotson on medical keeplock.

It is true, as the defendants observe, that "[i]n cases in which state action is motivated by both proper and improper reasons, the action may be sustained if it would have been taken even in the absence of the improper reason." *Id.* (quoting *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994)). But here there are material factual disputes as to whether Sticht would have put Dotson on medical keeplock absent a retaliatory reason.

For all those reasons, this Court denies the defendants' motion for summary judgment on Dotson's retaliation claim.

## **CONCLUSION**

For the reasons stated above and in the portions of the R&R that this Court has adopted, the defendants' motion for summary judgment, Docket Item 44, is GRANTED IN PART AND DENIED IN PART. More specifically, the defendants' motion is granted

6

with respect to Dotson's Eighth Amendment deliberate medical indifference claim, and the claims against defendants Prince, Carl J. Koenigsmann, and Eileen Dinisio are hereby DISMISSED. The defendants' motion is denied as to Dotson's First Amendment retaliation claim, and this Court will schedule a status conference to set a trial date on that claim.

SO ORDERED.

Dated: February 27, 2020
Buffalo, New York

*s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE